IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-03156-NYW

STEVEN RITTER,

    Plaintiff,

v.

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

    Defendant.

## MEMORANDUM OPINION AND ORDER

Magistrate Judge Nina Y. Wang

    This civil action arises under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401-33, for review of the Commissioner of the Social Security Administration's ("Commissioner" or "Defendant") final decision denying Plaintiff Steven Ritter's ("Plaintiff" or "Mr. Ritter") application for Disability Insurance Benefits ("DIB"). Pursuant to the Parties' consent [#14], this civil action was referred to this Magistrate Judge for a decision on the merits. *See* [#22]; 28 U.S.C. § 636(c); Fed. R. Civ. P. 73; D.C.COLO.LCivR 72.2. Upon review of the Parties' briefing, the entire case file, the Administrative Record, and the applicable case law, this court respectfully **AFFIRMS** the Commissioner's decision.

### LEGAL STANDARDS

    An individual is eligible for DIB benefits under the Act if he is insured, has not attained retirement age, has filed an application for DIB, and is under a disability as defined in the Act. 42 U.S.C. § 423(a)(1). An individual is determined to be under a disability only if her "physical or mental impairment or impairments are of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any

other kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C. § 423(d)(2)(A). The disabling impairment must last, or be expected to last, for at least 12 consecutive months. *See Barnhart v. Walton*, 535 U.S. 212, 214-15 (2002). Additionally, the claimant must prove she was disabled prior to her date last insured. *Flaherty v. Astrue*, 515 F.3d 1067, 1069 (10th Cir. 2007).

The Commissioner has developed a five-step evaluation process for determining whether a claimant is disabled under the Act. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). These include:

1. Whether the claimant has engaged in substantial gainful activity;

2. Whether the claimant has a medically severe impairment or combination of impairments;

3. Whether the claimant has an impairment that meets or medically equals any listing found at Title 20, Chapter III, Part 404, Subpart P, Appendix 1;

4. Whether the claimant has the Residual Functional Capacity ("RFC") to perform her past relevant work; and

5. Whether the claimant can perform work that exists in the national economy, considering the claimant's RFC, age, education, and work experience.

*See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). *See also Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (describing the five steps in detail). "The claimant bears the burden of proof through step four of the analysis[,]" while the Commissioner bears the burden of proof at step five. *Neilson v. Sullivan*, 992 F.2d 1118, 1120 (10th Cir. 1993). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (internal quotation marks omitted).

In reviewing the Commissioner's final decision, the court limits its inquiry to whether substantial evidence supports the final decision and whether the Commissioner applied the correct

legal standards. *See Vallejo v. Berryhill*, 849 F.3d 951, 954 (10th Cir. 2017). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty*, 515 F.3d at 1070 (internal citation omitted); *accord Musgrave v. Sullivan,* 966 F.2d 1371, 1374 (10th Cir. 1992) ("Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion."). "But in making this determination, [the court] cannot reweigh the evidence or substitute [its] judgment for the administrative law judge's." *Smith v. Colvin*, 821 F.3d 1264, 1266 (10th Cir. 2016).

**ANALYSIS**

**I.     Background**

   **A.     Medical History**

Mr. Ritter, born on February 20, 1955, alleges he became disabled on August 16, 2015, at 60 years and 5 months of age, due to secondary polycythemia, chronic obstructive pulmonary disease ("COPD"), vascular disease, and claudication. *See* [#12-3 at 68-69; #12-6 at 158, 162].[1] Because Mr. Ritter focuses his appeal solely on his extreme fatigue, caused by his secondary polycythemia and COPD, the court limits its discussion of the relevant medical evidence to these ailments.

Mr. Ritter suffers from both secondary polycythemia and COPD, both of which cause extreme fatigue. [#12-9 at 369; #12-10 at 489]. In February 2015, at a follow-up visit, physician John Burke, MD ("Dr. Burke") noted Mr. Ritter as having general fatigue, though Mr. Ritter denied sleep dysfunction. [#12-9 at 388-89]. In his physical exam, Dr. Burke labeled Plaintiff as "awake,

---

[1] When citing to the Administrative Record, the court utilizes the docket number assigned by the Electronic Court Filing ("ECF") system and the page number associated with the Administrative Record, found in the bottom right-hand corner of the page. For all other documents the court cites to the document and page number generated by the ECF system.

alert, and oriented." [*Id.* at 389]. A few months later, on August 13, 2015, Mr. Ritter saw his cardiologist following an emergency room visit due to increased shortness of breath and lightheaded dizziness. [#12-8 at 357]. Treatment notes stated that Mr. Ritter denied feeling lightheaded or dizzy and was "not feeling tired (fatigue)." [*Id.*]. The doctor noted that his condition was stable from a cardiac standpoint. [*Id.* at 358]. About a week later when seeing Dr. Burke for a follow up visit, Dr. Burke noted that Mr. Ritter still suffered from fatigue, though his physical exam indicated that Mr. Ritter was "awake, alert, and oriented." [#12-9 at 385-86]. Mr. Ritter once again denied sleep dysfunction. [*Id.*]

In November 2015, Dr. Burke noted that Mr. Ritter "continues to complain of fatigue but denies other complaints" and that Mr. Ritter's generalized fatigue had improved. [#12-9 at 380-81]. While there were still several instances from late 2015 through early 2016 when fatigue was included on Mr. Ritter's problem list, there was no sign of lack of sleep. [*Id.* at 371, 378, 384].

At one of Plaintiff's routine visits with Dr. Burke on February 3, 2016, his physical exam reflected that he was able to carry on normal activity. [#12-9 at 370]. Although fatigue was still noted on the problem list, Dr. Burke wrote that he was "not really convinced that he has polycythemia vera. Given the negative molecular testing (repeatedly), lack of convincing marrow findings, and alternative explanation in the form of heavy smoking and emphysema, I think that this is likely secondary polycythemia." [*Id.* at 371]. As for the plan for Plaintiff, Dr. Burke wrote that he believed the polycythemia is secondary to Plaintiff's COPD and encouraged him to quit smoking. [*Id.*].

On February 29, 2016, while receiving treatment with his hematologist, Mr. Ritter reported "that he is actually doing well." [#12-15 at 668]. Treatment notes revealed that Mr. Ritter denied weight loss, fever, chills, weakness, or fatigue. [*Id.*]. The following month, at a follow-up visit,

4

treatment notes revealed that Mr. Ritter reported that he was "doing well without acute complaints" despite earlier findings of fatigue. [*Id.* at 672]. In September 2016, Mr. Ritter's hematologist noted fatigue and that Mr. Ritter was waking up two-to-three times per night to use the restroom. [#12-17 at 765]. In October 2016, Mr. Ritter's hematologist again noted fatigue. [*Id.* at 739]. But in November 2016, Mr. Ritter's urologist noted that fatigue was not present. [*Id.* at 729].

In February 2017, Plaintiff returned to his cardiologist for a follow up appointment, and treatment notes indicated no unusual fatigue, that Mr. Ritter was alert, and that Mr. Ritter could still walk about half of a block before his legs cramped. [#12-17 at 723-24]. In June 2017, Mr. Ritter's urologist noted Plaintiff as being healthy. [*Id.* at 720]. Shortly after, in July 2017, Mr. Ritter saw his oncologist who noted that Plaintiff was "feeling great" and that he denied dizziness and lightheadedness. [#12-18 at 835]. Later that year, in October 2017, Plaintiff complained of new pain in his right buttocks and lower legs as well as shortness of breath and the feeling of being tired and sluggish. [#12-20 at 906]. Treatment notes, however, revealed that Plaintiff had "no true rest pain symptoms." [*Id.* at 905].

### B. Procedural History

On February 23, 2016, Plaintiff filed his application for DIB. [#12-5 at 146]. The Social Security Administration initially denied Plaintiff's application administratively on June 10, 2016. *See* [#12-4 at 85]. Mr. Ritter submitted a request for a hearing before an Administrative Law Judge ("ALJ"), *see* [#12-4 at 95], which ALJ Erin Justice ("the ALJ") held on November 27, 2017, *see* [#12-2 at 37]. The ALJ received testimony from the Plaintiff and Vocational Expert Pat Pauline (the "VE") at the hearing. *See generally* [#12-2 at 40-60].

Plaintiff testified that he lives with his adult son and that he can grocery shop, do his own laundry, clean the house, occasionally drive, and can feed (but not walk) his dog. [#12-2 at 41-

43]. Plaintiff explained that his physical activities and hobbies are limited because he cannot walk more than one block before his legs cramp up. [*Id.* at 53-54].

Plaintiff testified that he worked as a design manager for STV Energy Services. [*Id.* at 45]. As a design manager, Plaintiff was responsible for using a computer program to produce blueprints for gas plants; he was later promoted to supervisor and was responsible for reviewing the accuracy of roughly six employees' designs, though he did not have authority to hire and/or terminate these employees. [*Id.* at 46, 49-50]. Mr. Ritter explained that accuracy and timeliness were crucial to his job. *See* [*id.* at 49]. He testified that in an eight-hour day he was seated about half the day, that he did not lift much over five pounds, and that he "would fall asleep during the day" without consequence. [*Id.* at 45, 50]. Plaintiff stopped working in August 2015, due to a sudden onset of shortness of breath while driving to work one morning. [*Id.* at 43, 47].

Mr. Ritter testified that he has not worked since the shortness-of-breath-incident due to feeling tired all the time, all day long. [*Id.* at 47, 51]. He explained that he takes at least two naps during the day, ranging anywhere from thirty minutes to three or four hours, and that these naps are not planned as he "just falls asleep." [*Id.* at 48]. When asked if these naps are impacted by the amount of sleep he gets during the night, Mr. Ritter testified that he does not get much sleep and does not stay asleep for more than three or four hours at a time. [*Id.*]. When asked why he cannot work, Mr. Ritter testified that his feet and legs hurt and that he is tired all the time and cannot work for more than 90 minutes without falling asleep. [*Id.* at 52].

The ALJ then took the testimony of the VE. [#12-2 at 54]. The VE summarized Mr. Ritter's past relevant work to include power system engineer, a skilled position with a specific vocational preparation ("SVP")[2] of 8, and light exertion as performed by Mr. Ritter. [#12-2 at 55].

The VE then testified that an individual who could perform light work, subject to several exertional and non-exertional limitations, could perform Mr. Ritter's past relevant work. [#12-2 at 55-56]. The VE also testified that such an individual with the added limitation of one unscheduled thirty-minute break could perform Mr. Ritter's past relevant work, primarily because Mr. Ritter's past relevant work was a skilled position and there is an expectation that someone working such a skilled job could take an unscheduled thirty-minute break and still complete their work. [#12-2 at 56-57]. When asked if such an individual could take two such breaks and still perform Mr. Ritter's past relevant work, the VE testified:

> THE VE: You know, it's really hard. Typically, in this type of [skilled] work, if an individual takes an unscheduled break, they're going to make up for it and get the work done that needs to get done. . . . So I don't know. If the work isn't getting done, clearly, you know –
>
> THE ALJ: Is that the same, also, for off task? I know that off –
>
> THE VE: Yes.
>
> THE ALJ: So off task it's going to be the same thing.
>
> THE VE: Yes.
>
> THE ALJ: I can be off task for two hours a day, as long as I'm getting my work done and I'm at this high – [SVP of 8 position] . . .

---

[2] SVP refers to the "time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation.'" *Vigil v. Colvin*, 805 F.3d 1199, 1201 n.2 (10th Cir. 2015) (citing Dictionary of Occupational Titles, App. C, Sec. II (4th ed., revised 1991)); 1991 WL 688702 (G.P.O.). The higher the SVP level, the longer time is needed to acquire the skills necessary to perform the job. Jeffrey S. Wolfe and Lisa B. Proszek, SOCIAL SECURITY DISABILITY AND THE LEGAL PROFESSION 163 (Fig. 10-8) (2003).

THE VE: Yes.

[*Id.* at 56-57]. On follow-up by Plaintiff's attorney, the VE testified that the unscheduled breaks are thought to rejuvenate the employee to the point of being productive, but should the employee become unproductive for any reason, an employer would not tolerate such unproductivity. *See* [*id.* at 58-59]. Lastly, the VE testified that such an individual with the additional limitation of being absent or late three days a month would not be able to perform Mr. Ritter's past work. [*Id.* at 57]. The VE testified that her testimony was not inconsistent with the Dictionary of Occupational Titles, supplemented by her professional experience. *See* [*id.* at 57].

On March 13, 2018, the ALJ issued a decision finding Mr. Ritter not disabled under the Act at step four because Mr. Ritter had the RFC to perform the requirements of his past relevant work as a power system engineer. [#12-2 at 19-27]. Plaintiff requested Appeals Council review of the ALJ's decision, which the Appeals Council denied, rendering the ALJ's decision the final decision of the Commissioner. *See* [*Id.* at 8-10]. Plaintiff sought judicial review of the Commissioner's final decision in the United States District Court for the District of Colorado on December 8, 2018, invoking this court's jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 1383(c)(3).

On appeal, Mr. Ritter argues (though not in this order) the ALJ erred (1) at step two in finding Mr. Ritter's secondary polycythemia a non-severe impairment; (2) at the RFC assessment in discrediting Mr. Ritter's subjective complaints of extreme fatigue and failing to consider the combined effects of Mr. Ritter's COPD and polycythemia on his fatigue; and (3) at step four in finding that Mr. Ritter can perform his past relevant work by improperly analyzing the VE's testimony regarding Mr. Ritter's need for sleep-breaks during the work day and by failing to consider Mr. Ritter's age and its effect on his ability to maintain employment. *See generally* [#16;

#21]. I consider Mr. Ritter's challenges in turn, and I respectfully conclude that the ALJ did not err in denying Mr. Ritter's DIB application.

## II.     Step Two

At step two the Commissioner determines whether a claimant has any severe physical or mental impairments. *See Williams*, 844 F.2d at 750. "To find a 'severe' impairment at step two requires only a threshold showing that the claimant's impairment has 'more than a minimal effect on [her] ability to do basic work activities.'" *Covington v. Colvin*, 678 F. App'x 660, 664 (10th Cir. 2017) (quoting *Williams*, 844 F.2d at 751). But "the claimant must show more than the mere presence of a condition or ailment." *Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir. 1997). Indeed, an ALJ may conclude that an ailment is not a medically determinable impairment—a particularly important finding, as the ALJ must consider only <u>medically determinable impairments</u> (severe or not) at subsequent steps. *See Cook v. Colvin*, No. CV 15-1164-JWL, 2016 WL 1312520, at *4 (D. Kan. Apr. 4, 2016) ("Limitations attributed to impairments which are medically determinable but are not severe must be considered at later steps in the evaluation, whereas alleged limitations attributable to impairments which are not medically determinable must not be considered at later steps.").

Mr. Ritter argues it was error for the ALJ not "to accurately define secondary polycythemia as a 'severe' impairment" at step two. *See* [#16 at 16]. But in *Allman v. Colvin*, the United States Court of Appeals for the Tenth Circuit ("Tenth Circuit") explained that at step two "a claimant need only establish, and an ALJ need only find, <u>one</u> severe impairment[,]" as a finding of one severe impairment requires the ALJ to proceed to the next step considering *all* of the claimant's ailments (severe or not) anew. 813 F.3d 1326, 1330 (10th Cir. 2016) (emphasis added). "Thus, the failure to find a particular impairment severe at step two is not reversible error when the ALJ

9

finds at least one other impairment is severe." *Id.*; *see also Smith*, 821 F.3d at 1266-67 (holding as harmless error the ALJ's failure to find a severe left shoulder impairment at step two when the ALJ considered shoulder impairments in assessing the plaintiff's RFC); *Howard v. Berryhill*, No. 17-CV-00276-RBJ, 2017 WL 5507961, at *4 (D. Colo. Nov. 17, 2017) ("While it certainly would have been prudent for the ALJ to consider Ms. Howard's chronic pain syndrome diagnosis at step two . . . the ALJ's failure to do so is not reversible error under *Allman* because she determined that two of Ms. Howard's other impairments were severe.").

Here, the ALJ found Mr. Ritter to have the following severe impairments: peripheral arterial disease and COPD, *see* [#12-2 at 25], and "proceeded with the analysis as required." *Troe v. Berryhill*, No. 16-CV-02794-MEH, 2017 WL 2333101, at *7 (D. Colo. May 30, 2017) (relying on *Allman*, 813 F.3d at 1330). Thus, the ALJ's failure to define secondary polycythemia as a "severe" impairment is not reversable error.

## III. The RFC Assessment

In formulating a claimant's RFC, the ALJ must consider the combined effect of all the claimant's medically determinable impairments, including the severe and non-severe. *See Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013); *Ray v. Colvin*, 657 F. App'x 733, 734 (10th Cir. 2016). A claimant's RFC is the most work the claimant can perform, not the least. 20 C.F.R. § 404.1545. "'The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).'" *Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014) (quoting Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *7 ("The RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other

evidence.")). The ALJ need not identify "affirmative, medical evidence on the record as to each requirement of an exertional work level before an ALJ can determine RFC within that category," and the court will uphold the RFC assessment if it is consistent with the record and supported by substantial evidence. *See Howard v. Barnhart*, 379 F.3d 945, 947, 949 (10th Cir. 2004).

The ALJ determined that Mr. Ritter retained the RFC to:

> perform light work as defined in 20 CFR 404.1567(b) except he can occasionally lift 20 pounds and frequently lift 10 pounds. He can stand/walk for a total of 6 hours and sit for 6 hours in an 8-hour day. He can never climb ladders, ropes, or scaffolds. He can occasionally kneel and crawl. But he can never be around extreme temperature, fumes, dusts, and pulmonary irritants nor unprotected heights or heavy machinery.

[#12-2 at 27]. According to Mr. Ritter, substantial evidence does not support the ALJ's RFC assessment, because the ALJ erred in assessing Plaintiff's subjective complaints of fatigue and failed to consider the combined effects of his COPD and secondary polycythemia. *See* [#16 at 8]. For the following reasons, I respectfully disagree with Plaintiff.

### A. Credibility[3]

"'Credibility determinations are peculiarly the province of the finder of fact' and the [court] will uphold such determinations, so long as they are supported by substantial evidence." *Ruh v. Colvin*, No. 13-CV-01255-PAB, 2015 WL 1517392, at *2 (D. Colo. Mar. 30, 2015) (quoting *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995)). "Credibility determinations should not be conclusory, but instead 'closely and affirmatively linked' to evidence in the record." *Oliva v. Colvin*, No. 13-CV-02495-PAB, 2015 WL 5719645, at *7 (D. Colo. Sept. 30, 2015) (quoting

---

[3] Though SSR 16-3p superseded SSR 96-7p and eliminated the term "credibility", SSR 16-3p offers the same guidelines for ALJs to use in assessing a claimant's subjective complaints of symptoms and pain. *See* SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016). For this reason, the court will refer to this challenge as one speaking to Mr. Ritter's credibility. *See Watts v. Berryhill*, 705 F. App'x 759, 763 n.4 (10th Cir. 2017).

11

*Kepler*, 68 F.3d at 391)). In addition to considering the objective medical evidence, the ALJ must also consider several factors, including the claimant's daily activities; the location, duration, frequency, and intensity of her pain; aggravating and mitigating factors; any medication taken and its effectiveness in providing relief; other treatment received aside from medications; other measures utilized to alleviate pain, *i.e.*, lying down; and any other factors that may bear on the claimant's functional limitations. *See* 16-3p, 2016 WL 1119029, at *7 (Mar. 16, 2016); *Wilson v. Astrue*, 602 F.3d 1136, 1146 (10th Cir. 2010).

Mr. Ritter argues that the ALJ erred by failing to properly evaluate his complaint of fatigue as a debilitating impairment. [#16 at 13]. Specifically, Mr. Ritter argues the ALJ should have considered Mr. Ritter's subjective complaints of fatigue within the framework articulated by the Tenth Circuit in *Luna v. Bowen*, 834 F.2d 161 (10th Cir. 1987). According to *Luna*, an ALJ faced with an allegation of disabling pain must consider whether (1) objective evidence establishes a pain-producing impairment; (2) a loose nexus exists between the impairment and the pain alleged; and (3) all evidence, objective and subjective, supports the alleged disabling pain. *Id.* at 163-64. Mr. Ritter contends the medical evidence is replete with documentation of his extreme fatigue, caused by his secondary polycythemia and COPD, yet the ALJ disregarded this evidence in favor of a non-examining state agency medical source. *See* [#16 at 14; #21 at 6-7]. I respectfully disagree.

The Commissioner responds that the ALJ acknowledge Mr. Ritter's complaints of extreme fatigue but discredited those complaints based on inconsistent evidence in the medical record. *See* [#17 at 7]. Indeed, the Commissioner argues, Mr. Ritter's proffered evidence belies his beliefs that extreme fatigue was a greater burden than found by the ALJ. *See* [*id.* at 9 & n.6]. According to the Commissioner, the ALJ made clear the reasons for discrediting Mr. Ritter's subjective

complaints of extreme fatigue and the court should not reweigh the evidence nor second-guess that decision. *See* [*id.* at 8].

Based on a review of the medical record, I find no error in the ALJ's credibility assessment. To be sure, Mr. Ritter is correct that the record contains numerous references to his extreme fatigue. *See, e.g.*, [#12-9 at 371, 378, 379, 381, 384, 386, 388, 391; #12-13 at 561, 572; #12-14 at 631; #12-15 at 668, 672; #12-17 at 720, 736, 765, 766, 775; #12-18 at 809; #12-20 at 906]. But the ALJ considered many of these records in assessing Mr. Ritter's credibility. *See* [#12-2 at 28-30]. In doing so, the ALJ began by acknowledging Mr. Ritter's complaints of extreme fatigue, including his testimony that he feels tired all day long and ceased working because of his extreme fatigue. *See* [#12-2 at 27]. The ALJ, however, found these allegations not consistent with the medical and non-medical evidence in the record. *See* [*id.* at 28]. The ALJ explained, "[Mr. Ritter's] treatment record reveals both his COPD and [peripheral artery disease] are relatively stable, with most of his appointments consisting of routine follow-ups or other unrelated visits to his primary care doctor." [*Id.*]. The ALJ continued, with citations to the record, that despite Plaintiff's documented complaints of fatigue, Mr. Ritter did not complain of sleep dysfunction or any acute or distressing symptoms regarding his fatigue, and additional medical records revealed Mr. Ritter was doing well, had not complained of fatigue, and had normal physical exams. *See* [*id.*]. Ultimately, the ALJ concluded, "there are virtually no complaints in the longitudinal record concerning the claimant's alleged extreme fatigue." [*Id.* at 29].

While an ALJ may not pick and choose evidence that supports a finding of nondisability, she "is entitled to resolve any conflicts in the record[.]" *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007). That is what the ALJ did here, *see Allman*, 813 F.3d at 1333, and this court may not "displace the agency's choice between two fairly conflicting views," *Zoltanski v. FAA*, 372

13

F.3d 1195, 1200 (10th Cir. 2004) (brackets omitted). At bottom, the ALJ concluded Mr. Ritter's subjective complaints were inconsistent with the objective medical record, which is a proper basis for discrediting Mr. Ritter's allegations. *See Wall v. Astrue*, 561 F.3d 1048, 1070 (10th Cir. 2009) (upholding the ALJ's credibility determination, because "the ALJ clearly and affirmatively linked his adverse determination of Claimant's credibility to substantial record evidence indicating Claimant engaged in malingering and misrepresentation. Our precedents do not require more" (internal citations omitted)). Indeed, this court's review of Mr. Ritter's medical records supports the ALJ's observation that his objective medical record included self-reporting of "feeling great" on January 19, 2017 to his oncologist [#12-22 at 1066] and "no unusual fatigue" on February 21, 2017 by his cardiologist [#12-19 at 839]—both after the date of his alleged onset of disability.

In passing, Mr. Ritter takes issue with the ALJ's affording greater weight to a non-examining state agency physician's opinion than that of Plaintiff's treating sources. *See* [#16 at 14]. The court agrees with the Commissioner that Mr. Ritter fails to adequately develop this argument because he fails to explain any error in the ALJ's reasoning. *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to... put flesh on its bones."); *United States v. Davis*, 622 F. App'x 758, 759 (10th Cir. 2015) (explaining that it is not the court's role to craft arguments for litigants, especially when represented by able counsel). Nevertheless, the ALJ's decision addresses the opinion evidence offered in the record and sufficiently explains the reasons for the weight afforded these opinions—nothing more is required. *See Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) (explaining that the court will uphold an ALJ's weighing of the medical opinion evidence if she makes it clear her reasons for assigning

the weight she does). To find otherwise would amount to an impermissible reweighing of the evidence. *See Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1500 (10th Cir. 1992) ("[The court's] limited scope of review precludes [it] from reweighing the evidence or substituting [its] judgment for that of the [Commissioner].").

In sum, the ALJ affirmatively linked her credibility determination to substantial evidence and the court will not upset that determination, *see Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005), and the ALJ was not required to make a "formalistic factor-by-factor recitation of the evidence," *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012) (internal quotation marks omitted) (noting that "common sense, not technical perfection, is our guide."). Thus, I find no error in the ALJ's assessment of Plaintiff's credibility.

### B. Combined Effects of COPD and Secondary Polycythemia

Mr. Ritter also challenges the ALJ's RFC assessment on grounds that the ALJ failed to consider the combined effects Plaintiff's COPD and secondary polycythemia had on his extreme fatigue. *See* [#16 at 17]. According to Plaintiff, this failure necessitates remand. *See* [*id.*]. I respectfully disagree.

The Commissioner responds, and I agree, that the ALJ acknowledged that she considered of all Mr. Ritter's ailments, both singularly and in combination, and that Mr. Ritter's argument rests on his own subjective complaints of extreme fatigue that the ALJ properly discredited. *See* [#17 at 10]. Indeed, courts generally "take a lower tribunal at its word when it declares that it has considered a matter," *Flaherty v. Astrue*, 515 F.3d 1067, 1071 (10th Cir. 2007) (internal quotation marks omitted), and the ALJ explained that she considered the entire record and all of Mr. Ritter's impairments in conducting the RFC assessment, *see* [#12-2 at 27]. And, as discussed above, the ALJ's RFC assessment undertakes a comprehensive review of the medical evidence of record,

15

including the various references to Mr. Ritter's COPD, secondary polycythemia, and extreme fatigue, and explains the inconsistencies between those records and Mr. Ritter's subjective complaints of extreme fatigue. *See* [#12-2 at 27-30].

While the ALJ does not explicitly mention the combined effects of Mr. Ritter's COPD and secondary polycythemia, this omission does not constitute reversible error. *Cf. Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004) (finding harmless error where no rational fact-finder conclude differently based on the record before the ALJ). The ALJ gave detailed reasons for her conclusions and demonstrated that she sufficiently considered all of Plaintiff's impairments in the RFC assessment. *See Howard*, 379 F.3d at 947 (upholding the ALJ's RFC assessment where the ALJ discussed all of the relevant medical evidence in her decision even though the RFC assessment itself lacked a more thorough analysis). Accordingly, I find no error in the ALJ's RFC assessment.

## IV.  Step Four

At step four, it is Mr. Ritter's burden to establish that he is unable to perform has past employment as a power system engineer "*both* as [he] actually performed that work in the past *and* as it is generally performed in the national economy." *Adams v. Colvin*, 616 F. App'x 393, 394 (10th Cir. 2015) (emphasis in original) (citing *O'Dell v. Shalala*, 44 F.3d 855, 859–60 (10th Cir. 1994); *Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1051 (10th Cir. 1993)). *See also* SSR 82-61, 1982 WL 31387, at *2 (explaining a claimant will be found "not disabled" if she can perform her particular past relevant job *or* as the job is performed generally throughout the national economy). The Commissioner's regulations, however, mandate that the ALJ make specific factual findings as to a claimant's ability to perform past relevant work, *see* SSR 82-62, 1982 WL 31386, at *3, but this does not mean the ALJ is to act as the claimant's advocate, *Henrie v. U.S. Dep't of Health & Human Servs.*, 13 F.3d 359, 361 (10th Cir.

1993). These specific findings include a determination of (1) the claimant's RFC, (2) the physical and mental demands of the claimant's past relevant work, and (3) the claimant's ability to meet those job demands despite her mental and physical limitations. *See Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996) (detailing the three phases of step four).

The ALJ concluded at step four that Mr. Ritter's testimony and Work History Report indicated that Mr. Ritter worked as a power system engineer from 2006 to 2015—a period sufficient to learn the job. *See* [#12-2 at 30]. The ALJ further found that Mr. Ritter worked full time with an income at a substantial gainful activity level, and that Mr. Ritter performed this work within the last 15 years such that Mr. Ritter could still be expected to perform the job. *See* [*id.* at 30-31]. In comparing Mr. Ritter's RFC with the mental and physical demands of a power system engineer, the ALJ concluded that Mr. Ritter could perform his past relevant work given the VE's testimony that Mr. Ritter performed this work at a light exertional level; the ALJ also concluded that the VE's testimony was consistent with the Dictionary of Occupational Titles. *See* [*id.*].

Mr. Ritter asserts two challenges to the ALJ's step four finding. First, he contends the ALJ utilized an incorrect legal standard when considering the VE's testimony about an individual's ability to perform Mr. Ritter's past relevant work when needing unscheduled sleep-breaks throughout the day. Second, he argues the ALJ failed to consider the effect of Mr. Ritter's age on his ability to maintain employment. I consider each in turn, and I conclude that the ALJ did not error at step four.

### A. The VE's Testimony

Mr. Ritter contends the ALJ failed to consider the VE's testimony that someone who needed unscheduled sleep-breaks and could not complete his work would not remain employed. *See* [#16 at 14-15; #21 at 8-9]. Mr. Ritter continues that the ALJ then impermissibly substituted

17

"her experience as an Administrative Law Judge" to conclude that if she (the ALJ) could do her job while being off task for two hours per day, so too could Mr. Ritter. *See* [#16 at 15-16; #21 at 8-9]. The Commissioner responds that the ALJ was not required to accept the VE's testimony regarding limitations the ALJ did not find in the record; nor did the ALJ substitute her own experience as an ALJ in determining that Mr. Ritter, despite his need for sleep-breaks, could perform his past relevant work as a power system engineer. *See* [#17 at 11]. I respectfully agree with the Commissioner.

    First, the court finds no error in the ALJ's apparent disregard of the VE's testimony that someone who needed unscheduled sleep-breaks and could not complete their work could not perform Mr. Ritter's, or any, past relevant work. As discussed, the ALJ properly considered and rejected Mr. Ritter's subjective complaints of extreme fatigue. Moreover, the ALJ elicited testimony from the VE regarding the need for one or two unscheduled thirty-minute breaks. *See* [#12-2 at 56-57]. The VE testified that there is an expectation with skilled workers, like Mr. Ritter, that they will complete their job responsibilities even when off task for a time. *See* [*id.*]. The ALJ relied on this testimony while seemingly rejecting Mr. Ritter's assertion that he could not complete his work because of his need for unscheduled sleep-breaks. *See Doyal v. Barnhart*, 331 F.3d 758, 761 (10th Cir. 2003) ("An ALJ may rely on information supplied by the VE at step four." (internal quotation marks omitted)). Indeed, the ALJ's hypotheticals to the VE must contain only those impairments borne out by the medical evidence, *see Bean v. Chater*, 77 F.3d 1210, 1214 (10th Cir. 1995); *Evans v. Chater*, 55 F.3d 530, 532 (10th Cir. 1995); she need not ask about limitations she did not believe applied, *Smith*, 821 F.3d at 1270. *See also Hawkins v. Chater*, 113 F.3d 1162, 1168 (10th Cir. 1997) (explaining that ALJs are not required to "exhaust every possible line of inquiry in an attempt to pursue every potential line of questioning. The standard is one of reasonable good

judgment."). That is what the ALJ did here; Mr. Ritter's own testimony at the hearing supports the conclusion that his prior job allowed him to take unscheduled sleeping breaks without any suggestion that such breaks precluded him from completing his required work. [#12-2 at 50].

Second, the court finds that the ALJ did not impermissibly interject her own experience as an ALJ at step four. The colloquy at issue concerned whether an individual performing skilled work could be off task for two hours per day yet still complete their work. *See* [#12-2 at 56-57]. In clarifying the VE's testimony—that such an individual could perform Mr. Ritter's past relevant work under such circumstances—the ALJ stated, "I can be off task for two hours a day, as long as I'm getting my work done and I'm at this high [SVP of 8 position]," to which the VE answered, "Yes." [*Id.* at 57]. Unlike Mr. Ritter, this court does not interpret the ALJ's question as substituting her (the ALJ's) experience for that of Mr. Ritter. The question was merely meant to clarify the VE's equivocal testimony that unscheduled breaks do not automatically make someone incapable of performing Mr. Ritter's past relevant work so long as the work is getting done. The ALJ relied on the VE's testimony, consistent with the Dictionary of Occupational Titles, that someone could take unscheduled breaks throughout the day and still complete their work and then used this information in comparing Mr. Ritter's RFC with the mental and physical demands of his job as a power system engineer to conclude Mr. Ritter could perform his past relevant work. I find no error in the ALJ's analysis. *See Zaricor–Ritchie v. Astrue*, 452 F. App'x 817, 825 (10th Cir. 2011) (finding no error at step four where the ALJ relied on the VE's testimony, which was consistent with the DOT, in comparing the plaintiff's RFC with the demands of her past relevant work); *see also Barker v. Astrue*, 459 F. App'x 732, 741-42 (10th Cir. 2012) (explaining that it is the plaintiff's burden to demonstrate that he cannot return to his past relevant work).

### B. Age

Mr. Ritter's final challenge to the ALJ's decision is that because the ALJ did not consider Mr. Ritter's age, the ALJ denied Plaintiff a fair hearing and provided the court with an inadequate record. *See* [#16 at 18]. The Commissioner counters, and I agree, that the ALJ did not err in this regard, because Mr. Ritter's case was decided at step four and age is irrelevant at this step. *See* [#17 at 10]. When a case is decided at step four of the evaluation process, the ALJ "will not consider [the claimant's] vocational factors of age, education, and work experience or whether [the claimant's] past relevant work exists in significant numbers in the national economy." 20 C.F.R. § 404.1560(b)(3) (emphasis added). Indeed, the Commissioner must only consider a plaintiff's age in meeting her burden at step five. *See Hackett*, 395 F.3d at 1171. Because the ALJ concluded that Mr. Ritter could perform his past relevant work at step four, there was no need for the ALJ to consider Mr. Ritter's age. Accordingly, I find no error in the ALJ's analysis.

### CONCLUSION

For the reasons stated herein, the court hereby **AFFIRMS** the Commissioner's final decision.

DATED: December 16, 2019

BY THE COURT:

Nina Y. Wang
United States Magistrate Judge